MILDRED I. STARK *vs.* BOARD OF APPEALS OF QUINCY & others.

Norfolk. April 4, 1960. — June 3, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Zoning.*

A variance granted by a city's zoning board of appeals permitting a business use of a structure on premises in a residence district was properly annulled on appeal to the Superior Court under G. L. c. 40A, § 21, where it appeared that, apart from a filling station and garage antedating the zoning ordinance, the area was residential in character and had been since the adoption of the ordinance, that there were no conditions "especially affecting" the premises in question but not the zoning district generally, and that use of the structure for business would be detrimental to the public good and would substantially injure the residential properties in the area and so derogate from the intent and purpose of the ordinance; the variance was not supported by the fact that since the adoption of the ordinance the structure had for many years been used for various business purposes without right.

BILL IN EQUITY, filed in the Superior Court on October 14, 1958.

The suit was heard by *Dewing, J.*

*Charles W. O'Brien,* for the interveners.

*Harry Pavan,* for the plaintiff, submitted a brief.

SPALDING, J. This is a bill in equity under G. L. c. 40A,

§ 21, by way of appeal from a decision of the board of appeals granting a variance to permit a business use with respect to a portion of certain premises located in a residential district. The bill is brought by an owner of residential property abutting the premises (hereinafter locus) affected by the variance. The owners of the locus were permitted to intervene. The judge made findings of fact and entered a decree annulling the decision of the board of appeals. From this decree the interveners appealed. The evidence is reported.

The pertinent facts are these. The locus consists of a lot at 12 Common Street, Quincy, containing 4,680 square feet on which there is a single family dwelling which one Maertins, the plaintiff's predecessor in title, had built in 1925. The locus is in a residence B district in which single and two family houses are permitted. The plaintiff's property, also on Common Street, is contiguous to and south of the locus. It is in a residence A district in which single family dwellings are permitted. Business uses, other than those existing on July 1, 1943, when the zoning ordinance was adopted, are not permitted in either district A or district B. North of the locus is a filling station which is operated in conjunction with a garage. Across the street from the locus are two multiple family dwellings. All of these nonconforming structures and uses were in existence prior to the adoption of the zoning ordinance.

In 1944 a one story structure was attached to the house on the locus pursuant to a building permit for a two car garage. It is this portion of the interveners' property that is involved in the present controversy. In 1949 the garage doors were removed, and three windows and a door were substituted. This was done under a building permit issued on an application which stated that the property was to be used for storage purposes.

The interveners acquired title to the locus from Maertins on June 27, 1958. For some time prior to this the interveners had been negotiating with Maertins for the purchase. On June 13, Maertins filed an application with the

building department for a permit to alter the structure on the side of the house by an addition twenty feet wide and five feet in depth. The application stated that the structure was to be used for dwelling purposes. Pursuant to the application the extension was built. In September, after the work had been completed, the building inspector visited the property and found that it was being used for business purposes as an office. Upon being told by the inspector that this use was a violation of the zoning ordinance and could not continue, the interveners filed an application with the board of appeals for a variance permitting the altered structure to be used for an educational film library, admittedly a business use.

The judge found that there was no evidence of any change in the character of the neighborhood since the adoption of the zoning ordinance and that since that time numerous single family dwellings had been built in the area. He further found that "[t]o permit the use of . . . [the locus] for business would . . . cause substantial detriment to the neighborhood, particularly those owners of single family dwellings who had a right to expect there would be no invasion of business in a single family . . . residential district"; that there was "no demand for an extension of business in this particular district"; and that there was a "substantial area zoned for business within a very short distance from [the locus]." The judge concluded that the granting of a variance would "cause substantial detriment to the public good and would nullify and substantially derogate from the intent and purpose of the [zoning ordinance]."

Unless the foregoing findings were plainly wrong the decree below must stand. General Laws c. 40A, § 15, as amended by St. 1958, c. 381, authorizes boards of appeals to grant variances "where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise

to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law, but not otherwise.'' The governing principles in the application of the statute have frequently been stated. ''This court has said repeatedly that the power to vary the application of a zoning ordinance must be 'sparingly exercised and only in rare instances and under exceptional circumstances peculiar in their nature, and with due regard to the main purpose of a zoning ordinance to preserve the property rights of others.' '' *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, 438. *Benjamin* v. *Board of Appeals of Swansea,* 338 Mass. 257. And we have frequently stated the functions, both of this court and of the Superior Court, in reviewing decisions of boards of appeals made under G. L. c. 40A, § 15. *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 559. *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333.

We are of opinion that the conclusions of the judge, recited above, were amply supported by the evidence. There was, to be sure, a business use (garage and filling station) adjoining the locus, and there were multiple dwellings across the street. But, as stated above, these were nonconforming uses which were in existence prior to the adoption of the zoning ordinance. With these exceptions it appears that the area in which the locus was situated was essentially residential. The facts in the case at bar are quite different from those in *Amero* v. *Board of Appeal of Gloucester,* 283 Mass. 45, and *Tanzilli* v. *Casassa,* 324 Mass. 113 (cited by the interveners), where the permitted nonconforming use of the applicants' land, which existed before the passage of the zoning ordinance, was such that the change made by the variance sought was of small consequence. That is not the situation here.

The board of appeals in its decision seems to have been

influenced by the fact that since the adoption of the ordinance the portion of the locus for which a variance had been sought had been used for "various and sundry businesses . . . including an antique shop, real estate office, gift shop and plumbing shop." The judge found that there had been such uses of the portion in question since its erection in 1944, but he also found that there was "no evidence . . . that such uses were approved by the [board of appeals]." He correctly ruled that "[t]he fact that business had been conducted . . . in violation of the . . . [zoning ordinance] without . . . permission from the proper authority . . . [did] not give the owner any preferred standing" to obtain a variance.

Although the judge made no express finding concerning it, he could very well have found, as we find, that another requirement of § 15 was not satisfied, that is, that there were no "conditions especially affecting . . . [the locus] but not affecting generally the zoning district in which it is located." See as to this provision *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676.

The interveners complain that certain evidence which they sought to introduce on the issue of hardship was improperly excluded. But these rulings need not detain us. It is true that one seeking a variance must establish that "a literal enforcement of . . . the ordinance . . . would involve substantial hardship, financial or otherwise"[1] to him. But there are other requirements set forth in § 15 which must also be satisfied and a failure to establish any one of them is fatal. *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450. Since, as we hold, the variance must be denied for failure to meet other provisions of § 15, a discussion of evidential questions, which relate only to the hardship issue, would serve no useful purpose.

*Decree affirmed with costs of appeal to the plaintiff against the interveners.*

[1] The words "financial or otherwise" were added by St. 1958, c. 381.