PATRICK B. CALNAN & others[1] *vs.* PLANNING BOARD OF LYNN
& another.[2]

No. 04-P-91.

Suffolk. November 16, 2004. - May 4, 2005.

Present: PERRETTA, GRASSO, & MILLS, JJ.

*Subdivision Control,* Plan, Decision of planning board, Appeal. *Practice, Civil,* Appeal.

In a civil action appealing the decision of a city's planning board to approve a subdivision plan, the judge properly granted summary judgment in favor of the defendants on the ground that the plaintiffs had not timely filed their appeal in accordance with G. L. c. 41, § 81BB, where there were no material facts in dispute and where, even if the doctrine of estoppel were applicable, the plaintiffs were not entitled to its benefits, as their actions (i.e., filing their appeal approximately fifty-eight days later than the twenty days specified in the statute), in consequence of what they knew, were not reasonable. [388-391]

CIVIL ACTION commenced in the Land Court Department on April 25, 2003.

The case was heard by *Karyn F. Scheier,* J., on a motion for summary judgment.

*George E. Richardson* for the plaintiffs.

*John M. Hartley* for David J. Solimine.

*James P. Lamanna,* for Planning Board of Lynn, was present but did not argue.

MILLS, J. A Land Court judge determined, on summary judgment, that the plaintiffs' appeal of a decision of the planning board of Lynn (board) approving a subdivision plan (plan) was

[1]John J. Calnan, Joseph Clement, Lucette Clement, Theresa Savulis, Sharon A. Corbett, Frances Davis, Robert Davis, Cheryl DeRosa, Joanna Drivas, Peter Drivas, Eileen Woodbury, Donna Barrett, Bruce Healey, and Donna Healey.

[2]David J. Solimine, trustee of the MJS Realty Trust.

not timely filed in accordance with G. L. c. 41, § 81BB.[3] The plaintiffs argue that the judge erred in holding them to the twenty-day limitation because, despite their reasonable efforts, they were unable to ascertain the date upon which the twenty-day period for the filing of an appeal commenced, i.e., the date upon which the board filed its decision with the city clerk for the city of Lynn (clerk).[4] They also argue that the board never filed a "certificate of its action" with the clerk, and that whatever document was filed (they acknowledge that a document was eventually filed), it was not "recorded in a book kept for the purpose" of compliance with G. L. c. 41, § 81U, because the file folder system used by the clerk was not properly a "book kept for the purpose [of recording planning board certificates of action]."

1. *Material facts.* The facts are taken from the parties' stipulation and other materials in the summary judgment record,[5] and we recite the facts in the light most favorable to the nonmoving party, the plaintiffs. See *Anderson St. Assocs.* v. *Boston,* 442 Mass. 812, 816 (2004). On February 4, 2003, the board voted to approve the plan that is the subject of this case. At least one of the plaintiffs, Patrick Calnan, and the plaintiffs' attorney were present when the vote was taken. On February 6, 2003, the board filed with the clerk a document entitled "vote to approve" (certificate of vote), which is the only document that the

---

[3]General Laws c. 41, § 81BB, as amended through St. 1982, c. 533, § 2, as relevant to this appeal, provides:

> "Any person . . . aggrieved . . . by any decision of a planning board concerning a plan for subdivision of land . . . may appeal to the superior court . . . or to the land court; provided, that such appeal is entered within twenty days after such decision has been recorded in the office of the city or town clerk . . . and notice of such appeal is given to such . . . clerk so as to be received within such twenty days."

[4]General Laws c. 41, § 81U, as amended through St. 1960, c. 153, provides, in relevant part, that when a planning board approves a definitive subdivision plan, "[t]he . . . board shall file a certificate of its action with the city or town clerk, a copy of which shall be recorded by him in a book kept for the purpose . . . ."

[5]The stipulation does not indicate that it, exclusively, contains the material facts for purposes of the judge's decision (and our review). We take the facts from the stipulation as well as other record materials filed by the plaintiffs.

board filed with the clerk as notice of its approval of the plan. Sometime after the certificate of vote was filed, the document was placed in a folder that had an index tab with the letter "B" on it. It was placed in that folder because the vote pertained to Bulfinch Terrace, and that street name begins with "B." The folder contains several types of documents that reflect official board action pertaining to properties in the city that were located on streets beginning with "B."

During the week of February 10, 2003, Calnan visited the clerk's office and inquired of Cathy McKee, an office employee, whether the board had filed anything regarding Bulfinch Terrace. She told him that nothing had been filed as of that date and that she would inform him when such a filing was made. On February 6, 13, 20, and 27, and March 6, 13, 20, and 28, one John H. Tortolini, a resident of Bulfinch Road, located in the same neighborhood as the land shown on the plan, visited the clerk's office and inquired whether the board had filed any certificate of approval regarding the plan, and on each occasion he was told by an employee (not identified) that the board had not done so.

On or about February 26, 2003, Mary Audley, the clerk, telephoned Calnan and told him that the twenty-day period for the taking of any appeal with respect to the board's approval of the plan had expired, and that no appeal had been taken. When she stated to Calnan that the appeal period had expired, she was relying upon the certificate of vote that had been filed in her office on February 6, 2003. Audley telephoned Calnan because, when he had appeared at her office requesting that he be notified if something were filed with respect to the board's vote on the plan, she believed that he was referring to any notices of appeal filed by any party appealing the board's decision.

On February 27 or 28, 2003, Calnan went to the clerk's office and inquired of McKee what, if anything, had been filed to commence the appeal period. She told him that on February 6, 2003, the board's administrative assistant had filed the minutes of the board's meeting of February 4, 2003. Calnan was puzzled by her response, because he knew that it was the practice of the board not to file its minutes until they had been approved at a subsequent meeting, and because he believed that something

more than the board's minutes had to be filed in order to commence the appeal period.[6]

On February 28, 2003, Calnan informed the attorney who was representing the plaintiffs (including himself) of the conversations that he had had with both Audley and McKee. The attorney faxed copies of G. L. c. 41, § 81U, and the rules and regulations of the board to Calnan. The regulations identify a Form C-1, "LYNN PLANNING BOARD CERTIFICATE OF APPROVAL OF A DEFINITIVE PLAN," and specify that the form be used to file notice of the board's approval of a subdivision plan with the clerk.[7]

On or about March 3, 2003, Calnan again visited the clerk's office and, displaying a copy of Form C-1 to McKee, inquired whether the board had filed such a form and whether the office kept a book for the purpose of recording notices of approval of subdivision plans. McKee told Calnan that the board had not filed a Form C-1 with respect to the plan, and that the clerk's office does not keep a book, but keeps a folder instead.

McKee further told Calnan that the clerk's office keeps a folder in regard to the board minutes, but as of that time, the office had not yet inserted therein the board minutes for its meeting of February 4, 2003. In the following weeks Calnan and other representatives of the plaintiffs made visits to the clerk's office to determine whether a Form C-1, specifically, had been filed for the plan, and were repeatedly informed that no such form had been filed. The plaintiffs eventually filed their complaint in the Land Court on April 25, 2003, seventy-eight days after the certificate of vote had been filed with the clerk,

---

[6]Calnan had been at one time a member of the zoning board of appeals of Lynn and was personally acquainted with Audley and McKee.

[7]The certificate of vote filed February 6, 2003, is on the board's letterhead, and not on the specified Form C-1. There are documents in the summary judgment record indicating that the board has historically notified the clerk of the board's approval of subdivision plans by a document entitled "vote to approve" (or similar language), and not by use of the specific Form C-1. Neither Calnan nor anyone acting for the plaintiffs' interests ever asked to examine the folder in which board documents were filed or to examine, or examine and copy, documents (including the "minutes") that had been referred to or identified by McKee or Audley during the various discussions between Calnan and individuals at the clerk's office. The board's failure to use Form C-1 is of no consequence in this case.

and fifty-eight days after the clerk told Calnan that the board had filed a document that she believed had commenced the appeal period.

2. *Discussion.* With the assent of the parties, the defendants' motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), was converted to a motion for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 824 (1974), on the issue whether the plaintiffs' appeal was timely filed in accordance with G. L. c. 41, § 81BB. The judge ruled that there were no genuine issues of material fact, characterizing as not material the factual disputes regarding the accuracy of the information supplied to the plaintiffs by the clerk's office during and after February 26, 2003. The judge ruled that timely filing of a notice of appeal pursuant to § 81BB is a jurisdictional prerequisite to be strictly enforced. See *Lincoln* v. *Board of Appeals of Framingham*, 346 Mass. 418, 420 (1963); *McLaughlin* v. *Rockland Zoning Bd. of Appeals*, 351 Mass. 678, 680 (1967); *Pierce* v. *Board of Appeals of Carver*, 369 Mass. 804, 809 (1976); *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555, 558 (1986). In response to the plaintiffs' argument that the defendants should be estopped from asserting untimeliness of the appeal because of "misrepresentations" by McKee, the judge ruled that it was unreasonable for Calnan to rely upon statements made by a city employee for determining what documents were filed with the clerk's office or when the appeal period commenced. The judge concluded that the circumstances did not excuse the plaintiffs' filing of their appeal approximately fifty-eight days later than the twenty days specified in the statute.

In this appeal the plaintiffs argue that material facts were in dispute, thereby precluding summary judgment, and that in the version of the facts most favorable to the plaintiffs, they had excusable, good cause for the delay in the filing of their action. We conclude that the judge was correct in finding that the actions of the plaintiffs were not reasonable in the circumstances, and that the judge properly dismissed the plaintiffs' complaint. We reach our determination having assumed as true those facts claimed by the plaintiffs as material and that, they claim, were erroneously ignored by the judge.

The statute directs that an appeal from a decision of a plan-

ning board concerning a plan for subdivision of land is to be filed in court, and notice of the appeal provided to the clerk, within twenty days after the board's decision has been recorded in the office of the clerk. G. L. c. 41, § 81BB. "It is settled that compliance with the notice requirement within the twenty-day period is a jurisdictional prerequisite to the prosecution of an appeal under § 81BB." *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket,* 5 Mass. App. Ct. 206, 208 (1977). Timely filing in court is a jurisdictional prerequisite in appeals from administrative decisions. *Flynn* v. *Contributory Retirement Appeal Bd.,* 17 Mass. App. Ct. 668, 669-670 (1984). The twenty-day limitation in § 81BB is substantially equivalent to the twenty-day limitation in the Zoning Act, G. L. c. 40A, § 17, and it is clear that timely filing of the zoning appeal in court is jurisdictional. See *McLaughlin* v. *Rockland Zoning Bd. of Appeals,* 351 Mass. at 680 (in a case decided under the former G. L. c. 40A, § 21, predecessor to the current § 17, "[t]hese requirements are jurisdictional"); *Bingham* v. *City Council of Fitchburg,* 52 Mass. App. Ct. 566, 568 (2001), quoting from *Pierce* v. *Board of Appeals of Carver,* 369 Mass. at 811 ("[T]imely institution of an appeal should be held a condition sine qua non, while other steps in carrying out the appeal should be treated on a less rigid basis"). We are not unmindful that strict construction of the time limitation may create treacherous ground to both the parties and their lawyers. In *Carr* v. *Board of Appeals of Saugus,* 361 Mass. 361, 362 (1972), quoting from *McLaughlin* v. *Rockland Zoning Bd. of Appeals, supra* at 682, the court commented, "We have recently dealt with other jurisdictional aspects of this statute [former G. L. c. 40A, § 21,] and have indicated our reluctance to construe strictly its provisions when to do so would be tantamount to attributing to the Legislature an intent 'to create a series of procedural barriers reminiscent of an earlier age of the law.' "[8]

Our cases disclose a few instances of very minor relaxation of the filing requirement with respect to the notice in planning board and zoning appeals. See, e.g., *Carr* v. *Board of Appeals*

---

[8]As to circumstances when a procedural misstep is less fatal, see *Schulte* v. *Director of the Div. of Employment Security,* 369 Mass. 74, 79 (1975).

*of Saugus*, 361 Mass. at 362; *Konover Mgmt. Corp.* v. *Planning Bd. of Auburn*, 32 Mass. App. Ct. 319, 324 (1992).

The general rule, however, is otherwise. In *O'Blenes* v. *Zoning Bd. of Appeals of Lynn*, 397 Mass. 555 (1986), the plaintiff, who sought to appeal a decision of the zoning board, filed the notice of appeal with the municipal clerk one day late. The trial court dismissed the appeal for failure to comply with the notice requirement of G. L. c. 40A, § 17, despite the uncontroverted affidavit of the plaintiff's lawyer, which stated that the zoning board clerk misinformed him of the "last day for appealing the decision." *Id.* at 556. The affiant also asserted that he had relied upon the misinformation. *Ibid.* The Supreme Judicial Court refused to excuse the late filing of the notice by one day because of the misinformation, noting its reluctance "to apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest," *id.* at 558, quoting from *Holahan* v. *Medford*, 394 Mass. 186, 191 (1985), and that the public interest requires "strict enforcement of the statutory notice requirements." *O'Blenes*, *supra*. The court also instructed that "[i]n order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow." *Ibid.*, quoting from *Boston & Albany R.R.* v. *Reardon*, 226 Mass. 286, 291 (1917). "The reliance of the parties seeking the benefit of estoppel must have been reasonable." *O'Blenes*, *supra*. The court held that "[a]s a matter of law, it was not reasonable for counsel to rely on the statement of a clerk of the board for a determination of the last day for completing the procedural requirements for initiating an appeal from the board's decision. Counsel had an obligation to determine the date on which the board's decision was filed, and he was bound to take notice of the statutory requirements." *Id.* at 558-559, citing *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 693 (1982).

As of February 4, 2003, the plaintiffs knew the board had taken an action approving the subdivision plan from which they

sought to appeal. Their attorney and Calnan were present at the hearing when the board voted. Calnan knew, no later than February 26, 2003, that there was a document on file with the clerk that the clerk believed had commenced the twenty-day appeal period with respect to the plan. There is no evidence that Calnan asked to examine, or to examine and copy, the document that was identified by the clerk, who was, as noted, a person known to him as a municipal colleague. There is also no evidence that Calnan, at that time, complained to the clerk that her employee had misinformed him and had made promises (i.e., to inform him of anything by the board) that had not been kept.

When Calnan met with McKee between February 26 and February 28, 2003, she told him that the board's administrative assistant had filed something that she also believed commenced the time period for filing the appeal. Calnan was puzzled, but again there is no evidence that he asked to examine, or examine and copy, the document, especially whatever document the clerk had relied upon to form her opinion that the twenty-day period of appeal had expired, or the document which was described to him by McKee as "minutes." There is no evidence that, at any time, Calnan or anyone acting in the plaintiffs' interest ever asked to examine any "book" or "folder" or any other paper or document in the clerk's possession with respect to the plan. Calnan conveyed the substance of his conversations with the clerk and McKee to his attorney no later than February 28, 2003.

Considering the lengthy delay in the filing of the appeal in this case, the judge was correct in concluding that, even if the doctrine of estoppel were applicable, the plaintiffs were not entitled to its benefits, as their actions, in consequence of what they did know, were not reasonable.[9]

The judgment dismissing the appeal is affirmed.

*So ordered.*

---

[9]As noted above, Calnan and his lawyer were present on February 4 when the board voted. "It is well settled in similar cases, where a statute required action within a certain time 'after' an event, that the action may be taken before that event. Such statutes have been construed as fixing the latest, but not the earliest, time for the taking of the action." *Tanzilli* v. *Casassa*, 324 Mass. 113, 115 (1949). Compare Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999). See *Harper* v. *Division of Water Pollution Control*, 412 Mass. 464, 467-468 (1992); *Diamond* v. *Newton*, 55 Mass. App. Ct. 372, 374 (2002).